Estate of Roy J. Harries, Deceased, Hazel F. Harris, Executrix, and Hazel F. Harris, Surviving Wife v. Commissioner.
Estate of Harris v. Commissioner
Docket No. 4034-67.
United States Tax Court
T.C. Memo 1968-288; 1968 Tax Ct. Memo LEXIS 10; 27 T.C.M. (CCH) 1532; T.C.M. (RIA) 68288; December 18, 1968, Filed Edward M. Alvarez, for the petitioners. Joseph Nadel and Martin A. Schainbaum, for the respondent. TIETJENS
Memorandum Opinion TIETJENS, Judge: The Commissioner determined deficiencies in petitioners' income tax of $2,079.93, $1,391.99, $395.91 and $86.24, respectively, for the years 1961 through 1964. The deficiencies for the years 1961, 1962 and 1963 result from the allowance of a tentative carryback adjustment from 1964. The sole issue presented for our determination is whether a $25,005.34 loss sustained by petitioners in 1964 when they sold stock of their controlled corporation should be accorded ordinary loss treatment under section *12 1244 or capital loss treatment under section 165(g), I.R.C. 1954. [1]
All of the facts have been stipulated and are so found. Roy J. Harris and Hazel F. Harris, husband and wife, filed joint income tax returns for the taxable years 1961 through 1964 with the district director of internal revenue, San Francisco, California. They resided at Los Gatos, California, at the time they filed their petition herein. Prior to July 28, 1960, petitioners were copartners and sole owners of Cook's Automotive Service, a partnership. On that day 1533 petitioners formed Cook's Automotive Service, Inc., a corporation, for the purpose of transferring to it all of the business and assets of Cook's Automotive Service, in consideration for the assumption by the corporation of the partnership liabilities. On or about August 1, 1960, the petitioners, acting as board of directors of the corporation, accepted on behalf of the corporation, the partnership's offer. They authorized the issuance of 394 shares of the corporation's common stock. The corporation's acceptance of the offer *13 was in the form of the written resolution, which follows: NOW, THEREFORE, BE IT RESOLVED: That anyone of the Officers of this Corporation be, and he hereby is, authorized and directed to execute, verify and file in the name and behalf of this Corporation an application to the Commissioner of Corporations to the State of California (including amendments to such application and applications for amendments to permit) for a permit authorizing this corporation to sell and issue not to exceed 394 shares of this corporation's common stock of the par value of $100.00 per share, and to make, execute and deliver the Promissory Note of this Corporation in the principal sum of $75,000.00, payable on or before five years after date, and bearing interest at the rate of 8% per annum payable monthly, in consideration for the business and assets described in said offer, subject to the liabilities therein described, as of the close of business on July 31, 1960, to the persons and in the amounts as follows: ROY J. HARRIS - 134 shares HAZEL F. HARRIS - 260 shares HAZEL F. HARRIS - Promissory Note in the Principal Sum of $75,000.00 RESOLVED FURTHER: That upon the issuance of an appropriate permit *14 by the said Commissioner of Corporations pursuant to said application the President or the Vice President, and the Secretary or Assistant Secretary, of this corporation be, and they hereby are, authorized and directed to accept said offer on behalf of this corporation and to sell and issue 394 shares of the common stock of this Corporation of the par value of $100.00 per share and to make, issue and deliver the Promissory Note of this corporation in the principal sum of $75,000.00, payable on or before five years after date, and bearing interest at the rate of 8% per annum, payable monthly, in compliance with all of the terms and conditions of said offer and said permit and for the consideration hereinabove described; and RESOLVED FURTHER, That the Board of Directors hereby determines that the fair value of this Corporation of the consideration for which 394 shares of the common stock of the par value of $100.00 per share are to be issued and for which said $75,000.00 Promissory Note is to be made, executed and delivered, is $114,423.24; and RESOLVED FURTHER: That of the consideration to be received by this corporation for said 394 shares of its capital stock and said promissory *15 note, $114,400.00 shall be credited to stated capital, and the remainder ($23.24) shall be credited to paid-in surplus; and RESOLVED FURTHER: That the Officers of this Corporation be and they hereby are authorized and directed to execute all documents and to take all action which they may deem necessary or advisable in order to carry out and perform the obligations of this Corporation as set forth in said offer and the purposes of these resolutions. On September 23, 1960, the Department of Investment Division of Corporations of the State of California, upon application to it dated August 22, 1960, issued a permit authorizing the issuance of securities. Such a permit, under California's corporation law, expires after a period of six months from the time it is granted. A permit can be renewed only by an affirmative act of the corporation. In accordance with the authorization contained in the minutes of the August 1960 meeting of the board of directors, the corporation duly issued 394 shares of its common stock to Roy J. Harris and Hazel F. Harris in September 1960. On June 22, 1964, Hazel F. Harris sold her interest in Cook's Automotive Service, Inc., and also, as executrix of *16 the Estate of Roy J. Harris, sold his interest in the corporation to Lloyd T. White and A.L. Theis for $1,000. The adjusted cost basis of Roy J. Harris and Hazel F. Harris in their shares of Cook's Automotive Service, Inc., was $26,005.34. The petitioners claimed an ordinary loss of $25,005.34 on their 1964 income tax return as a result of the sale of the stock in Cook's Automotive Service, Inc. The petitioners also claimed a resultant net operating loss carryback from the year 1964 to the years 1961, 1962 and 1963, arising from the sale of this stock, in the amounts of $11,338.22, $8,502.23, and $1,675.89, respectively. The Commissioner disallowed the 1964 ordinary loss and resultant loss carrybacks for the years 1961 through 1963, and treated this loss as a long-term capital loss. Accordingly, the deduction was limited to a $1,000 capital loss in 1964. 1534 In 1958 Congress enacted section 1244 to "encourage the flow of new funds into small business" and to place shareholders in small business corporations, in respect of losses, "on a more nearly equal basis with * * * proprietors and partners." H. Rept. No. 2198, 85th Cong., 1st Sess., reprinted in 1959-2 C.B. 709, 711. *17 Under section 1244, a loss on "section 1244 stock" issued to an individual which would otherwise constitute a capital loss is treated as an ordinary loss. The concession thus granted is available only if certain conditions are met. The nature of the particular offering that will qualify stock under section 1244 is covered with great specificity. [2]
*18 With respect to the statutory requirement of section 1244(c)(1)(A), section 1.1244(c)1(c) (1), Income Tax Regs., provides: The common stock must be issued pursuant to a written plan adopted by the corporation after June 30, 1958, to offer only such stock during a period specified in the plan ending not later than two years after the date the plan is adopted. The two-year requirement referred to in the preceding sentence will be met if the period specified in the plan is based upon the date when, under the rules or regulations of a Government agency relating to the issuance of the stock, the stock may lawfully be sold, and it is clear that such period will end, and in fact it does end, within two years after the plan is adopted. The plan must specifically state, in terms of dollars, the maximum amount to be received by the corporation in consideration for the stock to be issued pursuant thereto. * * * We think that in order for any plan to constitute a written plan under section 1244 (c)(1)(A), the provisions and wording of the plan must clearly reflect a corporate decision to offer the stock only during a stated period of time (not exceeding two years) which is specified in the *19 document itself, and which must end no later than two years after the plan is adopted. The corporate resolution in this case authorizing the issuance of its common stock manifestly did not specify a corporate plan to limit the offer of its shares to any period of two years or less. Even if we were to hold that an oral plan was sufficient, which we do not, petitioner has failed to prove that there was even a specific oral plan by the corporation (or by the petitioners individually) that its stock issue be completed within two years. The facts of this case permit, at best, an inference that the corporation as of August 1, 1960, did not contemplate the issuance of more than the 394 shares then authorized, and that it anticipated those shares would probably be issued within the original six months term of the corporate permit. The statute requires that the plan expressly provide that the corporation will not issue its shares for a period exceeding two years. See James A. Warner, 48 T.C. 49 (1967), affd. 401 F. 2d 162 (C.A. 9, 1968), and Henry A. Childs, T.C. Memo. 1968-59. The plan involved in this case did not. Decision will be entered for the *20 Commissioner. 1535 Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 unless otherwise specified.↩
2. SEC. 1244. LOSSES ON SMALL BUSINESS STOCK. (c) Section 1244 Stock Defined. - (1) In general. - For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if - (A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan, (B) at the time such plan was adopted, such corporation was a small business corporation, (C) at the time such plan was adopted, no portion of a prior offering was outstanding, (D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities), and (E) such corporation, during the period of its 5 most recent taxable years ending before the date the loss on such stock is sustained (or if such corporation has not been in existence for 5 taxable years ending before such date, during the period of its taxable years ending before such date, or if such corporation has not been in existence for one taxable year ending before such date, during the period such corporation has been in existence before such date), derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this subparagraph only to the extent of gains therefrom); except that this subparagraph shall not apply with respect to any corporation if, for the period referred to, the amount of the deductions allowed by this chapter (other than by sections 172, 242, 243, 244, and 245) exceed the amount of gross income. * * *↩